**Robert S. CALVERT, State Comptroller, et al., Appellants,**

**v.**

**TAYLOR OILFIELD RENTAL CO., Appellee.**

**No. 11611.**

Court of Civil Appeals of Texas.

Austin.

June 5, 1968.

Rehearing Denied June 26, 1968.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., A. J., Carubbi, Jr., Executive Asst. Atty. Gen., John R. Grace, Mario G. Obledo, Terry Reed Goodman, Asst. Attys. Gen., Austin, for appellants.

Butler, Binion, Rice, Cook & Knapp, James D. Smullen, Richard H. Caldwell, Everett A. Marley, Jr., Houston, for appellee.

HUGHES, Justice.

Taylor Oilfield Rental Co., appellee, brought this suit against Robert S. Calvert, Comptroller of Public Accounts, Jesse James, Treasurer and Crawford Martin, Attorney General, in their respective capacities as officials of Texas, to recover taxes, penalties and interest paid by them under protest, the payment of such taxes being demanded by the Comptroller under the Limited Sales, Excise and Use Tax Act, Title 122A, Taxation-General, V.A.T.S. hereinafter referred to as the "Act." Motions for summary judgment were filed by all parties. The motion of appellants was denied; the motion of appellee was granted. None of the parties contends that an issue of fact is presented.

Appellee is in the business of renting and leasing general oilfield equipment to various firms for use in field operations. Charges for these items are based on a set fee for each day an item is used, with minimum daily charges in most instances. The rental period begins the day a rental item leaves appellee's yard and ends when the equipment is returned. The lessee assumes all responsibility for the equipment

while it is out of the possession of the lessor, and all transportation charges must be borne by the lessee. Appellee publishes and furnishes to its customer a price list (catalogue) which shows the daily rental charges and minimum periods of use for each item in stock. These rates are standard and are used on all invoices. In no instance does rental rate include the cost of delivery to the customer, or the cost to return to appellee.

A typical rental invoice enumerates the various items rented, states the rental rate for each item, states the number of days the equipment was used or the minimum day charge for the equipment, extends each item and totals the amount column to show the rental charges. On this total, a tax (2% of the total rental charges) is computed and then added to the amount owed column. The freight charges are then separately stated and no tax is computed on them.

Transportation of rental items to job sites is usually furnished by a public trucking firm. The customary practice in the trade is for such freight charges to be paid by the lessor and then billed to their customers, at cost, as a separate charge. However, the method of transportation and manner of payment is completely within the discretion of the customer, who occasionally pays the freight charges directly or may furnish his own trucks to do the hauling. The rental charge per day is the same under either circumstance, and does not include the freight charges. Appellee does not at any time realize any profit on freight charges.

Appellants have two points which present the single contention that under Art. 20.01 (H) of the Act the costs of transportation involved in this suit should have been included in the Rentals or Lease price, as a matter of law.

Art. 20.02 of the Act imposes a 2% tax on the "receipts from the sale at retail of all tangible personal property within this State." A "Rental" or "Lease" of such property is within the definition of a sale. Art. 20.01(K) (1).

"Receipts" is defined in Art. 20.01(D) (1) and (2) in part, as follows:

"(D) Receipts

(1) 'Receipts' means the total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers, valued in money, whether received in money or otherwise, without any deduction on account of any of the following: * * *

(c) The cost of transportation of the tangible personal property prior to its sale to the purchaser.

(2) 'Receipts' does not include any of the following: * * *

(g) Charges for transportation of tangible personal property after sale."

Art. 20.01(H) (1), upon which appellants rely, provides, in part:

"(H) Rental Price or Lease Price

(1) 'Rental Price' or 'Lease Price' means the total amount for which tangible personal property is rented or leased, valued in money, whether paid in money or otherwise, without any deduction on account of any of the following: * * *

(c) The cost of transportation of the tangible personal property at any time."

It is obvious that there is an inconsistency between the definitions of receipts in Art. 20.01(D) (1) and (2), supra, and the definition or meaning of Rental or Lease Price in Art. 20.01(H) (1), supra. We cannot give full effect to all such definitions.

■■ We have concluded that the more specific provisions of Art. 20.01(D) (1) and (2) should prevail over the more general and all inclusive language of Art. 20.01(H) (1) (c). A literal application of the provisions of these latter sections of

Art. 20.01 would result in taxing transportation charges when the lessee transports the leased property in his own vehicles by his own employees or when the lessee paid for such transportation directly to the carrier. We do not believe it reasonable to assume that the Legislature intended to include the cost of transportation of the property under these circumstances as taxable. We find no legislative intention in the Act to tax transportation costs per se, unless the vague language of Art. 20.01 (H) (1) (c) be so construed. This would be the result if we agreed with the appellants. The Act, as a whole, does not justify such result.

Our interpretation of these Articles harmonizes the treatment of transportation costs in leasing and rental transactions with sales in their ordinary connotation. See State v. Gifford-Hill, 428 S.W.2d 451, decided by this Court May 1, 1968.

The judgment of the trial court is affirmed.

Affirmed.